R. DAKIN & COMPANY, Plaintiff,

v.

CHARLES OFFSET CO., INC., doing business as Nora Nelson, Defendant.

No. 77 Civ. 1852.

United States District Court,
S. D. New York.

July 27, 1977.

Thomas M. Gibson and John L. Welch, of Morgan, Finnegan, Pine, Foley & Lee, New York City, and Melville Owen, of Owen, Wickersham & Erickson, San Francisco, Cal., for plaintiff.

Brumbaugh, Graves, Donohue & Raymond, New York City by Arthur S. Tenser, Russell H. Falconer, New York City, for defendant.

OPINION

ROBERT L. CARTER, District Judge.

*Findings of Fact*

This action is one for injunctive relief and for attorneys fees for infringement of a federally registered copyright, 17 U.S.C. §§ 101, 112 and 116, for violation of the federal trademark statute, 15 U.S.C. § 1125(a), and for unfair competition. The court has jurisdiction of the parties and the subject matter of the action under 28 U.S.C. §§ 1338(a) and 1338(b).

The plaintiff is a California corporation with its principal place of business in Brisbane, California. Defendant is a New York corporation. Nora Nelson is a mail order division of Marketing Showcase, Inc., a New York corporation. Both Charles Offset and Marketing Showcase operate from the same principal place of business located at 621 Avenue of the Americas in New York City. Alan Bortner is president and owner of both corporations which defendant in its answer describes as brother/sister corporations.

Dakin manufactures and sells high quality stuffed animals and dolls. These toys are manufactured at plaintiff's own plants in the United States and Mexico and some lines are manufactured by outside suppliers on a contract basis. Dakin's products are displayed in semiyearly catalogs and number in excess of 200 items.

Dakin products are sold to retailers, department stores, gift shops and restaurants. Dakin relies principally on its catalogs and attendance at trade shows to advertise its products. It does advertise in trade magazines and under some circumstances will underwrite in part a retailer's promotion of its product. Its expenditures for the fiscal year ending March, 1975, excluding cooperative advertising, was $84,105; for the fiscal year ending March, 1976, $96,032; and for the fiscal year ending March, 1977, $172,074. Its total gross sales for those years were $11,597,000; $15,865,000; $28,960,000 respectively.

Dakin has a four person design staff to design new products and create new ideas.

Its head designer is Virginia Kemp. In 1972, Kemp sketched two hugging mice called Eeny and Meeny Mouse and mailed the sketch to Dakin's supplier, Sekiguchi, in Japan to prepare a sample. For reasons not pertinent to this case, the design for Eeny and Meeny Mouse was abandoned. Sekiguchi, however, liked the idea, and, based upon the body concept of Eeny and Meeny Mouse, designed a pair of hugging monkeys, and a sample was sent to Dakin's product development department for evaluation. Dakin's staff designers, Kemp and Betty Lund, made physical changes on the sample and other changes which were set down on an item correction sheet and an item specification sheet. On March 12, 1975, the sample with corrections and with instructions that a sewn-in label be applied to the underseam of the toy bearing Dakin's copyright legend "© R. Dakin & Co.–1975" was returned to Sekiguchi who at that time had set up a shop in Korea.

Sekiguchi prepared another sample incorporating all the requested corrections. This sample was submitted to Dakin. Betty Lund checked the sample and determined that a proper copyright notice had been affixed to it as indicated, and on April 13, 1975, Dakin sent its first purchase order to Sekiguchi in Korea for 300 dozen of the animals. The item was at first called Monkey Business but was changed to Monkey Around. On April 17, 1975, a revised item specification sheet was sent to Sekiguchi requesting that Velcro be put on the paws of the monkeys to allow them to be separated and that kapok be eliminated from the stuffing material. The first shipment of these monkeys arrived from Korea prior to May, 1975.

Sekiguchi has a long association with Dakin as one of its principal outside suppliers. When Dakin moved its own stuffed toy production facilities from Japan with the devaluation of the dollar, Sekiguchi was encouraged by Dakin's president to move to Korea and establish the Star Wangu Co. so that he could continue his association with Dakin. Sekiguchi travelled to Korea to look for a suitable production site and Da-

kin helped establish Star Wangu, which is Sekiguchi's Korean company, where Monkey Around is manufactured.

The first Monkey Around items were sold in May or June, 1975. The item caught on immediately and large back order problems were created. The Monkey Around has been the single most popular item in Dakin's history. By August 1976, sales of Monkey Around had grossed over $500,000, and as of the time of the hearing in this case over 429,000 of these toys have been sold at a gross of over two million dollars. At present there are four outside suppliers in addition to Star Wangu manufacturing Monkey Around.

In 1976, Lever Brothers and Dakin entered into an agreement pursuant to which Lever Brothers was offered exclusive premium use of Monkey Around in connection with a national promotional campaign for Close Up toothpaste. The first purchase of the toy was in June, 1976, and Lever Brothers advertised the monkeys as Close Up Monkeys. Advertisements appeared in the September, 1976 issue of Family Circle magazine, and in the August or September issues of McCalls, Seventeen and Ladies Home Journal. As of February, 1977, Lever Brothers had purchased 167,000 Monkey Around items from Dakin. Lever Brothers' Close Up toothpaste promotional effort continued and its exclusive premium in the use of Monkey Around was scheduled to expire in June, 1977.

The Monkey Around design and conception resulted from the cooperative effort of Sekiguchi and Dakin. Dakin uses 100% of the Star Wangu production capacity, and Sekiguchi is not allowed to sell any items he makes for Dakin to anyone else. Any designs he creates are made exclusively for Dakin in accord with Dakin's general policy that any design submitted to Dakin for acceptance becomes Dakin's exclusive property. When articles are manufactured by outside suppliers, the designs remain exclusively Dakin's property, and all outside suppliers are required to sign agreements to this effect. Each purchase order contains an agreement reserving the design or item

produced for Dakin exclusively. Such a contract is in effect between Sekiguchi and Dakin.

All samples of Monkey Around have had the Dakin copyright notice affixed to it, and the notice has been attached to all Monkey Around items sold, including those sold to Lever Brothers. Dakin applied for federal registration of its Monkey Around copyright and its application was approved on July 29, 1976, and copyright Certificate of Registration No. Gp 109822 was issued.

As part of its Close Up toothpaste campaign, Lever Brothers prepared promotional material featuring a full color picture of the Monkey Around toy. Charles Offset Co. was hired to print the various promotional items needed in the campaign. The Lever Brothers order was placed with Charles Offset on May 20, 1976, and Charles Offset printed materials in May or June, 1976.

Sometime in May, 1976, Charles Offset and Bortner, its owner, had possession of the Monkey Around design and knew that Lever Brothers was preparing a nationwide advertising campaign featuring the Monkey Around toy.

At about this time, Marketing Showcase Inc. formed Nora Nelson as its mail order division. In July, 1976, Adele Abrams came on as Vice President of marketing for Nora Nelson, reporting to Bortner. In August, 1976, Bortner decided to have Nora Nelson market what it called the Lovey Dovey Monkeys. Before July, 1976, Abrams had not marketed a stuffed toy, nor has she marketed any such toy since except the Lovey Dovey Monkeys which is the basis of this litigation. Abrams had had no prior experience in the stuffed toy field.

After the decision was made to market the hugging monkeys, Abrams called Dakin in September, 1976 to inquire about Monkey Around but was advised Dakin could not supply her even with a sample. It did send a catalog.

The Lovey Dovey Monkeys are similar to the Dakin Monkey Around. The only discernible differences between Dakin's Mon-

key Around and defendant's Lovey Dovey Monkeys are the two pink bows on the female rather than one red bow as in Monkey Around, and white trim around the face of both the Lovey Dovy Monkeys. Otherwise, the color, the face and posture, the mouth, the hands, the shape of the nose, the ears, the closed eyes of the female and the feet of the Lovey Dovey Monkeys are almost exact duplications of the color, face and posture of Monkey Around.

Defendant first sold its monkeys in January, 1977, and since then advertisements for the product have been published in newspapers in Texas and California. One of these advertisements appeared in the San Francisco Chronicle in February, 1977, and was seen by Betty Lund. Plaintiff's copyright counsel sent defendant a cease and desist letter in March, 1977, and Lund, on the attorney's advice, sent defendant a sample Monkey Around, a copy of Dakin's copyright certificate and a copy of U. S. Customs registration for the toy. Defendant has continued to advertise and market the product.

The newspaper advertisement featured a photograph of Nora Nelson Lovey Dovey Monkeys and a text virtually identical to that used in the Lever Brothers promotional campaign.

*Conclusions of Law*

In a copyright infringement action, plaintiff must establish ownership of the copyright and copying by the defendant. *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir. 1976); *McGraw-Hill, Inc. v. Worth Publishers, Inc.*, 335 F.Supp. 415, 419 (S.D.N.Y.1971); 2 Nimmer on Copyright § 141, at 611 (1976). The test is whether the similarity between the two products would lead the average observer to recognize the alleged copy as having been appropriated from the copyrighted work. *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc.*, 509 F.2d 64, 65 (2d Cir. 1974) (per curiam); *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).

There is no question but that plaintiff has established ownership of the copyright. In January, 1977, defendant first offered for sale a pair of stuffed hugging monkeys called Lovey Dovey Monkeys. Plaintiff filed its application for copyright on Monkey Around on July 26, 1976, listing April 3, 1975, as the date of publication. A certificate of registration claim to copyright No. Gp 109822 dated July 26, 1976, was issued to plaintiff for Monkey Around. The copyright registration certificate is prima facie evidence of ownership and validity. 2 Nimmer on Copyright, *supra*, § 141.1, at 611. Defendant has shown nothing to the contrary. Defendant argues that the design is Sekiguchi's and not plaintiff's. But plaintiff has shown its relationship to Sekiguchi as an independent contractor whose designs and ideas are at the exclusive service of the plaintiff. Sekiguchi is manufacturing Monkey Around in Korea and attaching plaintiff's copyright label to each item. When works are done for hire, the copyright belongs to the employer, *Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565, 567 (2d Cir. 1966), and the fact that here the manufacturer was an independent contractor does not render the work for hire doctrine inapplicable. *Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213, 1217 (2d Cir. 1972).

For a copyright on a piece of work to be valid, the work must contain "some substantial, not merely trivial, originality. . . ." *Chamberlin v. Uris Sales Corp.*, 150 F.2d 512, 513 (2d Cir. 1945). This need not be "invention in the sense of striking uniqueness, ingeniousness or novelty," *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976), but the work must owe its creation to the author and cannot be mere copying. *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99 (2d Cir. 1951). That standard has clearly been met by plaintiff in respect of its Monkey Around.

It is also clear that defendant had access to Monkey Around by virtue of the role it played in the Lever Brother Close Up

Toothpaste campaign. Plaintiff has made a prima facie showing of copying, by establishing access and substantial similarity. No countervailing evidence showing independent creation by defendant was produced. Absent such evidence, a finding that there was no copying would be clearly erroneous. *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir. 1970). Indeed, the similarities here are so striking that "no explanation other than copying" is credible. 2 Nimmer on Copyrights, *supra,* § 141.2, at 614; *Arrow Novelty Co. v. Enco National Corp.,* 393 F.Supp. 157, 160 (S.D.N.Y.1974) (Gagliardi, J.). Slight changes were made, but the similarity between the two products would lead the average lay observer to recognize the alleged copy as having been appropriated from the copyrighted work. *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc., supra,* 509 F.2d at 65; *Ideal Toy Corp. v. Fab-Lu, Ltd., supra,* 360 F.2d at 1022; *Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra,* 274 F.2d at 489. Defendant placed a white band around the head of the two monkeys, placed a pink ribbon on the female, rather than red, and the eyes of the male are open rather than closed. This does not save the defendant from liability since introduction of a novel element by a copier of a copyrighted design will not avoid liability for infringement if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them and regard their aesthetic appeal as the same" as that from which it was copied. *Ibid.* Looking at these two samples, it is difficult to detect any substantial differences between them. "Good eyes and common sense," *Couleur International Ltd. v. Opulent Fabrics, Inc.,* 330 F.Supp. 152, 153 (S.D.N.Y.1971) (Frankel, J.), would lead one to the inevitable conclusion that defendant's Lovey Dovey Monkeys had been copied from plaintiff's Monkey Around.

Defendant contends that the design of two hugging animals has been in the public realm for a long time, and, therefore, Monkey Around is not entitled to protection. There is no evidence on this record that plaintiff copied any prior work. Indeed, the evidence establishes that plaintiff devised an original design. Accordingly, Monkey Around as an original work "may command copyright protection even if completely identical with a prior work provided it was not copied from such prior work but is rather the product of the independent effort of its author." 1 Nimmer on Copyright, *supra,* § 10.1, at 34.

■ Defendant in its post-hearing brief now urges that defendant is the wrong party. In its answer, however, the Lovey Dovey Monkeys were referred to as belonging to defendant. The answer states: "Defendant's Lovey Dovey Monkey constitutes an expression obviously differing from plaintiff's * * * and were not copied therefrom" (Par. 28, Defendant's answer); "Defendant's advertisements for its Lovey Dovey Monkeys employ descriptive terminology common in the stuffed toy field" (Par. 31, Defendant's answer); and Defendant "markets its Lovey Dovey Monkey solely through mail order inserts" (Par. 34, Defendant's answer). Defendant counterclaims on grounds that plaintiff's copyright is invalid. Pursuant to these assertions defendant has conceded that the Lovey Dovey Monkey is in fact its product and it is now too late to retreat behind a corporate veil.

■ Plaintiff has made a prima facie showing of infringement, and therefore is "entitled to a preliminary injunction without a detailed showing of danger of irreparable harm." *Rushton v. Vitale,* 218 F.2d 434, 436 (2d Cir. 1955).

Accordingly, the preliminary injunction is granted. Defendant is ordered to render an accounting on all profits from the sale of its Lovey Dovey Monkeys and pay over such profits to plaintiff and defendant is charged with plaintiff's attorneys fees and the costs of this action.

IT IS SO ORDERED.