**Ray REPP & K & R Music, Inc., Plaintiffs–Counter–Defendants– Appellants–Cross Appellees,**

**v.**

**Andrew Lloyd WEBBER; Really Useful Group, plc, Defendants–Counter–Claimants–Appellees–Cross Appellants,**

**Really Useful Company, Incorporated; MCA Records, Inc.; Hal Leonard Publishing Corporation; Polygram Records, Incorporated, Defendants–Appellees– Cross Appellants.**

Nos. 218, 509, Dockets 96–9691, 97–7050.

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1997.

Decided Dec. 30, 1997.

William R. Coulson, Cherry & Flynn, Chicago, IL (Peter Flynn, Cherry & Flynn, Chicago, IL, of counsel), for Plaintiffs–Counter–Defendants–Appellants–Cross–Appellees.

Jane G. Stevens, Gold, Farrell & Marks, New York City (Christine Lepera, Robert P. Mulvey, Gold, Farrell & Marks, New York

City, of counsel), for Defendants–Counter–Claimants–Appellees–Cross–Appellants and Defendants–Appellees–Cross Appellants.

Before: KEARSE, MINER and CABRANES, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs Ray Repp and K & R Music, Inc. ("K & R") appeal from a summary judgment entered in the United States District Court for the Southern District of New York (Kram, J.) in favor of defendants in an action involving claims and counterclaims grounded in copyright infringement. The defendants are Andrew Lloyd Webber, a well-known British composer of musical works for stage production, Really Useful Group, plc, his copyright proprietor, and Really Useful Company, Incorporated, Polygram Records, Inc., MCA Records, Inc. ("MCA") and Hal Leonard Publishing Corporation, all said to be Lloyd Webber's licensees. The summary judgment dismissed the claim of Repp, an established American composer of popular liturgical music, and K & R, a publisher of religious and church music, that the "Phantom Song," composed by Lloyd Webber, copies the song, "Till You," composed by Repp. Also before us is a cross-appeal from a judgment in favor of Repp and K & R entered in the same action after a non-jury trial. This judgment dismissed the counterclaims of Lloyd Webber and his copyright proprietor alleging that "Till You" copies the song "Close Every Door" composed by Lloyd Webber.

For the reasons that follow, we reverse the summary judgment that is subject of the appeal, and we affirm the judgment entered after trial that is subject of the cross-appeal.

## BACKGROUND

### I. Of Ray Repp, His Music and His Claim.

Repp has been a professional composer and performer of liturgical music for more than thirty years. He has written and published music for eleven albums, encompassing one hundred twenty different musical compositions. Over the years, Repp has performed in the United States, Canada, Europe and Asia, and some of his lyrics have been translated into foreign languages. His music has been published by his own company, plaintiff K & R, as well as others, including Our Sunday Visitor, FEL Publications, Word Publications and Hope Publications. It also has been published by the Lutheran, Episcopal, Presbyterian and Catholic churches and by the Church of the Brethren. Repp's songs have been included in various hymnals and song books. He has been recognized as a leading author and performer of liturgical folk music.

Repp wrote the song "Till You" in 1978 and registered it with the United States Copyright Office the same year. The song is liturgical in nature, being based on passages from the Book of Luke, commonly known as the "Magnificat." It has been distributed since 1978 as part of the album "Benedicamus" in the form of cassettes and record albums. The song appears in sheet music form in books entitled "Benedicamus" and "Life Songs." Twenty-five thousand copies of the sheet music were said to have been published and distributed.

With respect to albums or cassettes that included "Till You," Repp asserts that he personally ordered a total of eighteen thousand copies and that all but a handful have been sold or distributed. Repp is not fully able to document the sales, but he does have some records, including those relating to sales of fifty albums and fifty cassettes of "Benedicamus" to a distributor in Australia. Although music from "Benedicamus" may have made the "heavy play list" at the Fordham University Radio Station, Repp could not establish the frequency with which "Till You" was played on any radio station. However, Repp has performed the song in over two hundred concerts given since 1978 in the United States and many foreign countries. These performances were given in convention centers, churches, universities and theaters. Repp estimates that over one hundred thousand people have heard him perform his song "Till You," and he contends that Lloyd Webber, having had access to this music, copied it, intentionally or unintentionally, in writing the "Phantom Song."

## II. Of Andrew Lloyd Webber, His Music, His Defense and His Counterclaims.

Lloyd Webber is a composer who has achieved outstanding international success. He resides in England, maintains a residence in New York City, and travels widely. He has more than three hundred published compositions to his credit. His work for the theater includes such acclaimed musical shows as "Joseph and the Amazing Technicolor Dreamcoat," "Jesus Christ Superstar," "Cats," "Evita," "Starlight Express," "Song and Dance," "Aspects of Love," "Sunset Boulevard," and "The Phantom of the Opera." Lloyd Webber completed the "Phantom Song" in late 1984, and the piece was recorded in December 1985 by Sarah Brightman and Steve Harley. It was released as a single recording in January 1986 in England. "The Phantom of the Opera," a dramatico-musical show had its premiere in London in 1986. "Phantom Song" is an important part of the work, which was registered in the United States Copyright Office in 1987. The show opened on Broadway in 1988.

"Joseph and the Amazing Technicolor Dreamcoat" (hereinafter, "Joseph") first was presented as a choral work in London in 1968. The song "Close Every Door" was among the first portions of the choral presentation that Lloyd Webber completed. The composition was a centerpiece in every subsequent version of "Joseph," which was based on the Biblical tale of Joseph's sale into slavery by his brothers and subsequent rise to success in Egypt. An expanded version was presented at the Edinburgh Festival in 1972 and in London in 1973. Following the London run, Lloyd Webber and lyricist Tim Rice further expanded "Joseph" into a full-length musical. In 1989, Lloyd Webber's company, Really Useful Group, acquired by assignment all the rights and interest in the copyright for "Joseph," including "Close Every Door." The assignment thereafter was recorded in the United States Copyright Office.

"Joseph" was recorded as an album by Decca Records and publicly released in 1969. "Close Every Door" was the first single recording released from the album. In 1971, Sceptre Records released the album in the United States, where it was sold in retail stores and appeared on the Billboard Magazine charts of Top LPs for twelve weeks. MCA issued a sound recording of "Joseph," including "Close Every Door," in 1974. Sales of the MCA recording exceeded twenty-three thousand units. Between 1969 and 1978, at least forty thousand copies of the sheet music of the vocal score were sold. Between 1968 and 1978, "Joseph" was widely performed by stock and amateur theater companies and was broadcast on the radio. "Close Every Door" was heard in the United States on religious radio programs, which Lloyd Webber asserts were "directly within Repp's sphere of interest." Lloyd Webber contends that the widespread dissemination of "Close Every Door," together with Repp's interest in the musical genre, provide important evidence of access. He asserts that there are striking and significant similarities demonstrating that "Till You" copies the earlier written "Close Every Door."

## III. Of Defendants' Motion for Summary Judgment.

### A. The Motion and the Response.

The defendants' summary judgment motion was made at the conclusion of fact and expert discovery. The moving papers include a declaration by Lloyd Webber that he began to compose "Phantom Song" at Sydmonton Court, his home in Sydmonton, England, in late 1983. Sarah Brightman, who later became his wife, worked with him as he composed. According to Lloyd Webber, the song was designed to show off Brightman's vocal range, and she sang the melody as he composed at the piano. No lyrics were written at that time, and no notation of the music was made. Lloyd Webber declared that, although the song was not completed that day, the whole of the melody was developed. Thereafter, Lloyd Webber was occupied with other projects and did not get around to completing the entire "Phantom Song" until 1984.

Ms. Brightman furnished a declaration confirming Lloyd Webber's account of the origination of "Phantom Song." In her declaration, she recalled Lloyd Webber asking her

to sing the music that he played on the piano. Lloyd Webber modified the melody and the chords of the piece as he played and she sang. Brightman declared that in September 1984 she accompanied Lloyd Webber to a meeting with Michael Batt, who was to produce a recording of the song Lloyd Webber had composed for her. In October 1984, Brightman and Batt recorded "Phantom Song" at Air Studios in London.

Both Lloyd Webber and Brightman assert that they never heard of Ray Repp or his music prior to this litigation. Lloyd Webber testified at his deposition that he dislikes "pop church music" and never listens to it. His interest in "church music" is limited to "the English Choral tradition." Although Repp alleged a connection with Lloyd Webber through a common acquaintance, Robert Velline, it appears that Velline actually was acquainted with Lloyd Webber's brother and met Lloyd Webber only briefly in 1986. Velline, a 1960s rock singer known as Bobby Vee, had received a copy of Repp's album, "Benedicamus," in 1979.

Lloyd Webber also submitted in support of his motion for summary judgment the affidavits and report of an expert musicologist, Dr. Lawrence Ferrara. Ferrara is a Professor of Music at New York University and has written numerous books and articles on musical analysis. In analyzing the part of "Till You" allegedly infringed by the "Phantom Song," he identified two separate musical phrases in "Till You," and three separate phrases in the "Phantom Song." Ferrara determined that the third phrase really was a variant of the first phrase in the latter piece. In arriving at his findings, he reviewed Lloyd Webber's prior works as well as other extant musical literature.

Ferrara found that the first phrase of the "Phantom Song" was derived from Lloyd Webber's earlier compositions: "Benjamin Calypso" and "Pilate's Dream." He also identified in phrase one various compositions in the public domain, including pieces by Bach and Grieg. He found that phrase two of the "Phantom Song" was derived primarily from "Close Every Door" but also from other works by Lloyd Webber. Professor Ferrara was of the opinion that there is a greater

similarity between phrase two of "Close Every Door" and phrase two of "Till You" than there is between phrase two of "Phantom Song" and phrase two of "Till You." Defendants put forth Ferrara's findings that the two relevant phrases of the "Phantom Song" were derived from compositions by Lloyd Webber that predated "Till You," and his findings that the melody in phrase one was derived from compositions in the public domain, to support their claim that any music in the "Phantom Song" similar to "Till You" results from Lloyd Webber's independent creation.

Plaintiffs' response to the motion for summary judgment included the affidavits and reports of two musicologists—Professors H. Wiley Hitchcock and James Mack. Professor Hitchcock is Distinguished Professor of Music at the City University of New York and Founding Director of the Institute for Studies in American Music at Brooklyn College of City University. He is the author of a number of scholarly books and articles about music. Hitchcock provided a thirty-five page musicological analysis, with attached charts, to support his conclusion that "Phantom Song" is based on "Till You." In his analysis, he examined overall structure, rhythm and meter, melody and harmony and the interaction of these elements in the two pieces as a whole. Hitchcock found "the basic rhythmic character" and the "basic metrical character" of each piece identical. Although the two pieces are written in different harmonic modes, Hitchcock opined that they "reveal significant correspondences, and in harmonic rhythm an absolute identity."

According to Professor Hitchcock, the principal and most important aspect to be considered in the comparison of the two pieces is the melody of each piece. Analyzing pitch and rhythm as the constituent elements of melody, Hitchcock asserted that "there were striking similarities between the two melodies." His conclusion was as follows:

Between "Till You" and "Phantom Song," however, the similarities are so many, in so many areas, over such an extraordinary proportion of the compositions, that I cannot consider them as insignificant or coin-

cidental, and I must conclude that "Phantom Song" is based on "Till You."

Professor Mack is Professor and Chairman of the Humanities Department at Harold Washington College in Chicago, Illinois. He has composed music and has been employed as an arranger, conductor and record producer. He also has been involved in the production of radio and television commercials. Professor Mack has conducted various symphony orchestras in the performance of his own works and has performed as a flautist on a number of occasions. His analyses are put forth in his affidavit and in Repp's answer to certain interrogatories. Mack approached the music in question from a contemporary commercial point of view as well as from the traditional academic perspective utilized by Professor Hitchcock.

Although he was largely in agreement with Professor Hitchcock's analysis and conclusions, Professor Mack found "even more similarities," particularly "harmonic similarities" than were found by Hitchcock. Mack's analysis also took into account his opinion that aural impressions are more significant in commercial music than in symphonic music because the former is designed for the lay listener who derives his impression from what he or she hears. Professor Mack concluded "that 'Till You' and 'Phantom' are strikingly similar, and are so similar as to preclude separate creation."

B. *The Opinion of the District Court.*

In its comprehensive decision granting summary judgment dismissing the claims of plaintiffs, the district court first agreed with defendants' contention "that plaintiffs cannot prove that Lloyd Webber had access to Repp's 'Till You' song prior to composing the Phantom Song." *Repp v. Lloyd Webber,* 858 F.Supp. 1292, 1301 (S.D.N.Y.1994)("*Repp I* "). The district court determined that there was no chain of events by which Lloyd Webber might have gained access to Repp's song, since Lloyd Webber categorically denied any exposure to Repp or his music and there was no nexus between Robert Velline and Lloyd Webber that would justify an inference of access on that basis. *See id.* at 1301.

The district court also determined that the wide dissemination of the allegedly infringed work, which could satisfy the burden of showing access, was not established. In arriving at this conclusion, the district court pointed to various perceived deficiencies in the plaintiffs' evidence—the lack of documentary proof of the number of copies of "Till You" actually distributed to the public in album, tape or cassette form; the failure of the testimony to describe quantity, time and place of distribution of the "Benedicamus" album; inability to establish that the advertising of Repp's music included "Till You" as a distinct composition; and, despite Lloyd Webber's fondness for church music and the widespread performance of Repp's music in church and other venues, the failure to establish that Lloyd Webber visited any of the places where "Till You" was performed. *See id.* at 1301–03.

The district court also rejected plaintiffs' contention that "Till You" is so strikingly similar to the "Phantom Song" as to preclude the possibility of independent creation and to permit access to be inferred without direct proof. In this connection, the district court stated:

Upon aural examination of the two songs and consideration of the expert testimony submitted by both parties, the Court finds that any similarities that exist between the two works are not so extensive as to support an inference of copying and improper appropriation without more. While the two melodies share several common notes, the songs differ in tempo and style. In addition, plaintiffs' expert, Prof. Hitchcock, concedes that the two pieces differ in harmony, key and mode. Under the circumstances, the Court finds that the two songs do not share a striking similarity sufficient to justify a finding of copying in the absence of access to the copyrighted work.

*Id.* at 1303.

The district court also accepted the defense of independent creation. The court credited the declarations of Lloyd Webber and Brightman concerning the creation of the "Phantom Song" at Lloyd Webber's home in Sydmonton in 1983 and the later

development of the song in 1984. According to the district court, "[p]laintiffs have not submitted any evidence to contradict defendants' proof that the Phantom Song was created in the manner" described in the declarations of Lloyd Webber and Brightman. *Id.* at 1304. The court rejected plaintiffs' argument "that Lloyd Webber and Brightman are interested parties, and that their allegations of independent creation are therefore incredible." *Id.* Finally, the court dismissed pendent state claims of unfair competition and deceptive trade practices for lack of jurisdiction, finding, among other things, that there was not complete diversity of citizenship. *See id.* Plaintiffs do not here contest the dismissal of the state claims.

### IV. *Of the Trial of the Counterclaims and the Decision that Followed.*

In denying a motion to dismiss the counterclaims, the district court determined "that a reasonable jury could infer that Repp had access to the song 'Close Every Door' by virtue of its wide dissemination in the public domain" prior to the composition of "Till You." In addition the Court found that an issue of fact existed as to whether the two works were substantially similar. *See Repp v. Lloyd Webber,* 892 F.Supp. 552, 557–58 (S.D.N.Y.1995). Accordingly, Lloyd Webber having withdrawn his claim for damages, the parties proceeded to trial before the court.

Lloyd Webber testified that he had not heard "Till You" in any form until after he filed the counterclaim, which was interposed in reliance upon the analysis of Professor Ferrara. According to the testimony of Ferrara, there were twelve fundamental melodic pitches in common in the analogous measures of "Till You" and "Close Every Door." Nine of the twelve were said to appear in identical consecutive sequence. Ferrara opined that section A of both pieces shared the same internal structure and that there were other similarities between the two songs, including harmonic similarities. Each song was said to consist of two sections of music, alternatively repeated: section A, containing the similar music at issue and section B, containing dissimilar music. It was Ferrara's opinion that the music included in section A of each song

comprised more than fifty percent of the published songs.

Repp testified that he did not copy "Close Every Door" when he wrote "Till You," and that the two pieces did not at all sound alike to his ear. He testified that he first attended a live stage performance of "Joseph and the Amazing Technicolor Dreamcoat" in 1982. It is at that time that he would have heard "Close Every Door" for the first time, although there was evidence that Repp had been aware of the existence of Lloyd Webber's work, including "Joseph," prior to that time. Testifying on behalf of Repp at the trial, Professor Mack concluded that "Till You" and "Close Every Door" were "distinctly dissimilar." He noted differences in the thrust and ambience of each song, observing that the songs are set to different meters, one is in the major mode and one in the minor, and that the rhythms are "antithetical." In arriving at his conclusion, Mack analyzed the components of harmony, melody and mode, as well as meter and rhythm. According to Mack, Repp did not copy from "Close Every Door."

In dismissing the counterclaims following trial, the district court set forth at length its findings of fact and conclusions of law. *See Repp v. Lloyd Webber,* 947 F.Supp. 105, 107 (S.D.N.Y.1996)("*Repp II* "). In the opinion, the district court rejected Lloyd Webber's claims regarding Repp's access to "Close Every Door." The court accepted Repp's testimony that he was not exposed to the piece until he attended a performance of "Joseph" in 1982. *See id.* at 114–115. With respect to the widespread dissemination of the piece as a basis for access, the district court noted, among other things, that "Joseph" did not achieve its greatest commercial success until after 1980, two years after "Till You" was created. *See id.* at 115. The court also noted that the evidence of sales and distribution prior to that time was too sparse to support an inference of access. *See id.* On the question of substantial similarity, the district court stated that it "credits the testimony and conclusions of Repp's music expert, James Mack ('Mack'), and finds that Lloyd Webber has not established that Repp copied from 'Close Every Door.' " *Id.* In crediting

Mack's testimony, the district court in its opinion undertook a detailed examination of the Mack musicological analysis and identified the deficiencies in Lloyd Webber's evidence.

## DISCUSSION

### I. Summary Judgment Reversed.

 Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying. *See Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139 (2d Cir.1992). Actual copying must first be shown, either by direct evidence or by indirect evidence. *See id.* at 140. The latter type of evidence "includ[es] access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Id.* It is only after actual copying is established that one claiming infringement is required to show substantial similarity [1] between the two works relating to the protectible material. *Id.* In satisfaction of this requirement in a case alleging music plagiarism, the claimant is constrained to prove that "defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such ... music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." *Arnstein v. Porter*, 154 F.2d 464, 473 (2d Cir. 1946).

 We have held that where there are striking similarities probative of copying, proof of access may be inferred: "If the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir.1995) (quotation and citation omitted); *see also Gaste v. Kaiserman*, 863 F.2d 1061, 1067–68 (2d Cir.1988). Independent creation is an affirmative defense, evidence of which may be introduced to rebut a prima facie case of infringement. *See Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir.1982). The fact that infringement is "subconscious" or "innocent" does not affect liability, although it may have some bearing on remedies. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998–99 & n. 12 (2d Cir.1983).

 We review the granting of a motion for summary judgment by applying the same standard as the district court applied and determine *de novo* whether or not summary judgment is warranted. *See Taggart v. Time Inc.*, 924 F.2d 43, 45–46 (2d Cir.1991). Under the governing Rule, judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Rule is clear in "provid[ing] that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no. *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

In our review of the district court's decision, it is necessary for us to resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir.1997). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In making the necessary showing, "[c]onclusory allegations will not suffice to create a genuine issue." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990). The

---

1. Copyright caselaw has caused considerable confusion by the use of the term "substantial similarity" at two different points of the copyright infringement analysis. In an effort to clarify this confusion, we have noted that the term "probative similarity" should be used when referring to the initial burden of proving copying by establishing access and/or similarities. *See Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir.1992). After a plaintiff has proved copying, he must then show that the copying was unlawful by establishing "substantial similarity" between the works at issue. *See id.* at 140–41.

Supreme Court teaches that a "genuine" dispute over a material fact arises only where it can be said that the evidence would allow a reasonable jury to find in favor of the non-moving party. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

We are mindful that factual materiality is governed by reference to the applicable substantive law. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). In this case, of course, our reference is to the substantive law governing actions for copyright infringement. Because the non-moving parties, here the plaintiffs, bear the burden of proof at trial on their claim that Lloyd Webber's "Phantom Song" copies Repp's "Till You," the defendants may satisfy their burden under Rule 56 by showing "that there is an absence of evidence to support [an essential element] of the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ Clearly, the duty of a court on a motion for summary judgment is to determine whether there are any genuine issues of material fact to be resolved by trial and not to decide factual issues. In this regard, the court's task is issue identification, not issue resolution. *See Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510–11. In performing this task, we must assume the truth of the non-movant's evidence. *See id.* at 255, 106 S.Ct. at 2513–14. It seems to us that the district court failed to make the requisite assumption. We think that the district court undertook to resolve some material issues of fact revealed on the motion for summary judgment rather than to identify those issues and leave them for trial. We think that the defendants failed to demonstrate the absence of evidence supporting the elements of plaintiffs' copyright infringement case. And we think that the evidence presented by plaintiffs would allow a reasonable fact-finder to find in favor of the plaintiffs.

In determining that plaintiffs could not prove that Lloyd Webber had access to "Till You" prior to composing "Phantom Song," the district court first rejected the argument that access could have been gained through an intermediary, Robert Velline. The court noted the uncertainty of Velline's testimony and his ultimate disclaimer of any allegation that he distributed Repp's music to either Lloyd Webber or Lloyd Webber's brother. The court next rejected the claim of access through wide distribution of "Till You," "find[ing]" that plaintiffs' evidence of 'wide dissemination' does not rise above the level of pure speculation." *Repp I,* 858 F.Supp. at 1302. As to the argument that Repp's music was widely advertised, the court made a "find[ing]" that the fact that K & R may have distributed newspapers and mailings advertising Repp's music does not establish that the 'Till You' song was advertised as a distinct musical composition." *Id.*

Finally, in determining the issue of access, the district court evaluated the evidence of the advertisement and performance of "Till You" in a "specialized religious market." *Id.* This evaluation lead to a "find[ing] ... that the mere fact that Lloyd Webber composes liturgical works and is 'fond of church music,' ... does not establish either that he visited any of the places at which Repp's 'Till You' song was performed, or had access to the *Benedicamus* recording during the relevant time period." *Id.* at 1303.

While there was little, if any, evidence demonstrating access, there was considerable evidence that "Phantom Song" is so strikingly similar to "Till You" as to preclude the possibility of independent creation and to allow access to be inferred without direct proof. The district court recognized our rule permitting an inference of access where there is "striking similarity," citing *Arnstein v. Porter,* 154 F.2d at 468–69 and *Gaste v. Kaiserman,* 863 F.2d at 1067. *See Repp I,* 858 F.Supp. at 1303. However, the district court fell into error in rejecting the evidence presented by the plaintiffs and making findings on this issue. Two highly qualified experts, Professors Hitchcock and Mack, gave unequivocal opinions based on musicological analyses. Professor Hitchcock averred that there was "no doubt about the striking similarity" and concluded that "Phantom Song" is based on "Till You." Professor Mack opined that the two pieces "are strikingly similar, and are so similar as to preclude separate creation."

In the face of the plaintiffs' expert testimony, the district court, relying upon its own "aural examination" as well as the expert testimony put forth by the defendants, *found* "that the two songs do not share a striking similarity sufficient to justify a finding of copying in the absence of access to the copyrighted work." *Repp I*, 858 F.Supp. at 1303. It was not for the district court to make this factual finding where such strong competing evidence was before it. The issue of "striking similarity," by virtue of the supported opinions of the experts, including that of Professor Ferrara for the defendants, was shown to be a genuine issue of material fact. Access to the music of Repp being an essential element of his case, it cannot be said that there is an absence of evidence to support proof of that element through the inference generated by the striking similarity of the two pieces.

Finally, the district court found on the motion for summary judgment that even if plaintiffs could prove access and probative similarity, "they have not submitted any evidence to controvert the defendants' proof of independent creation." *Id.* at 1303. In arriving at this conclusion, the district court accepted the declarations of Lloyd Webber and Brightman concerning the creation of "Phantom Song" by Lloyd Webber, with the assistance of Brightman, at Lloyd Webber's home in Sydmonton, England. The district court apparently was of the opinion that some direct evidence was required to contradict their version of the events surrounding the beginnings of "Phantom Song."

Plaintiffs note in their brief that a leading text on copyright includes this comment: "Proof of independent creation, whether direct or inferential, should be taken with a grain of salt." 2 Paul Goldstein, Copyright: Principles, Law and Practice § 7.2.2 (1989). Defendants respond that "Professor Goldstein's comment has nothing to do with objective empirical expert evidence of independent creation, which was the heart of defendants' motion." While the comment may well overstate the proposition, the fact remains that the district court accepted only the version of interested witnesses on the question of separate creation. *See Repp I*, 858 F.Supp. at 1303 & n. 15. But Professor Mack for the plaintiffs specifically found that the two pieces of music "are so similar as to preclude separate creation." Here, again, the district court erred by undertaking the resolution of a disputed issue of material fact. We have previously determined that independent creation is an affirmative defense and may be used to rebut a prima facie case of infringement. *See Eden Toys, Inc.* 675 F.2d at 501. The plaintiffs here have established a prima facie case of access through striking similarity, which certainly includes the element of probative similarity. Whether the evidence of independent creation here is sufficient to rebut the prima facie case, established in this action is a question for the factfinder, whatever the contours of the burden of establishing the defense. *See generally* 3 Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 12.11[D] (1997).

## II. *Judgment After Trial Affirmed.*

 We review a trial court's findings of fact following a bench trial for clear error. *See* Fed.R.Civ.P. 52(a); *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 481 (2d Cir.1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Moreover, "special deference" is paid to findings of fact where the trial court bases its determinations on assessments of witnesses' credibility. *See id.* at 574, 105 S.Ct. at 1511–12; *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). We may "reverse only when we are left with the firm conviction that a mistake has been committed." *See SNC S.L.B. v. M/V Newark Bay*, 111 F.3d 243, 247 (2d Cir.1997) (quotation and citations omitted).

In dismissing the counterclaims interposed by Lloyd Webber following a 5–day trial, the district court made detailed findings of fact, carefully evaluating all the evidence presented. The court then undertook a pellucid examination of the applicable law, which it then applied to the facts as found. We find no error, let alone clear error, in the conduct of the trial or in the findings of the court and therefore have no difficulty affirming substantially for the reasons stated in the district court's well-stated and well-reasoned opinion. *See Repp II,* 947 F.Supp. at 109.

We note that in rejecting Lloyd Webber's claim regarding Repp's access to "Close Every Door," the district court as factfinder accepted Repp's trial testimony that he had no access to this piece of music until he had attended a performance in which it was played in 1982. This was long after the creation of "Till You." The court also found after trial that "Joseph" did not achieve commercial success until after 1980, also after "Till You" was created, and that there was not enough in the way of sales or distribution prior to that time to support a finding of access through that means. Finally, the court accepted the trial testimony of Professor Mack, the only expert witness presented by plaintiffs at trial, that "Till You" was not copied from "Close Every Door." The trial court had the opportunity to evaluate the credibility of witnesses and to review the documentary evidence first-hand, and was persuaded that there was no copying. We have absolutely no basis upon which to reject that determination.

## CONCLUSION

In accordance with the foregoing, we reverse the summary judgment entered by the district court dismissing plaintiffs' claims for copyright infringement and remand for further proceedings thereon; we affirm the judgment dismissing defendants' counterclaims for copyright infringement entered after trial by the district court.