Rhonda DIMMIE, p/k/a Rhonda Dee, Plaintiff,

v.

Mariah CAREY; Walter Afanasieff; Columbia Records, Inc.; Sony Music Entertainment Inc.; Sony Songs, Inc.; Sony Music Publishing; Wallyworld Music; Rye Songs; WB Music Corporation; American Society of Composers; Authors & Publishers (ASCAP); Broadcast Music, Inc. (BMI); and Hal Leonard Publishing Corporation, Defendants.

No. 96 Civ. 7977(RMB).

United States District Court, S.D. New York.

Feb. 17, 2000.

Les J. Levine, Law Offices of Gary Greenwald, Goshen, NY, for Rhonda Dimmie.

Orin Snyder and Cynthia S. Arato, Parcher, Hayes & Snyder, New York, NY, for Mariah Carey, Walter Afanasieff, Columbia Records, Inc., Sony Music Entertainment Inc., Sony Songs, Inc., Sony Music Publishing, Wallyworld Music, Rye Songs, and WB Music Corp.

## FINDINGS

BERMAN, District Judge.

### I. *Introduction*

On October 22, 1996, the Plaintiff, Rhonda Dimmie ("Plaintiff" or "Dimmie"), filed the instant complaint claiming that Defendants Mariah Carey ("Carey"), Walter Afanasieff ("Afanasieff"), Columbia Records Inc. ("Columbia Records"), Sony Music Entertainment Inc. ("Sony"), Sony Songs, Inc., Sony Music Publishing, Wallyworld Music, Rye Songs, WB Music Corporation, American Society of Composers, Authors & Publishers ("ASCAP"), Broadcast Music, Inc. ("BMI"), and Hal Leonard Publishing Corporation (collectively, "Defendants") had committed copyright infringement under 17 U.S.C. §§ 101 *et seq.* Specifically, Plaintiff asserts that she is the author and copyright holder of a song called "Be Your Own Hero" which was allegedly misappropriated by Carey and the other Defendants. Defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). **For the reasons stated below, Defendants' motion is granted.**

### II. *Background*

Dimmie alleges that in June of 1990 she composed a song entitled "Be Your Own Hero" and that she obtained a valid copyright for "Be Your Own Hero" in August of 1991. (Complaint ("Compl.") ¶¶ 3, 6). Dimmie claims that she mailed one or more recordings of "Be Your Own Hero" to Defendant Columbia Records sometime between late 1990 and early January of 1992. **(Compl.¶¶ 12–13). Dimmie states that she never sought or obtained an acknowledgment of receipt by Columbia Records; she further alleges that the recordings were never returned. (Dimmie Affidavit ("Dimmie Aff.") ¶ 172).** Dimmie asserts that she heard the recording of a song by singer/songwriter Defendant Mariah Carey, entitled "Hero," on a local radio station in November of 1993. (Compl., ¶ 27). **She says that she did not become aware of "significant similarities" between "Hero" and "Be Your Own Hero" until she "conducted a side by side" analysis of the two songs in October of 1995. (Compl.¶ 28).**

Dimmie's principal accusations against Defendants rest upon a series of tenuous inferences or assumptions. Dimmie "infers" that employees of Defendant Columbia Records "listened to the tape" of "Be Your Own Hero" and that ("it would also be reasonable to infer that") the song came to the attention of (the President of Defendant Sony of which Columbia Records is a division,) Tommy Mattola. (Plaintiff's Opposition Brief ("Pl.'s Opp'n. Br.") at 4). Dimmie "infers" that Mattola "shared (the tape) with Afanasieff" and states that it is "reasonable to infer that Carey listened to the tape." (Pl.'s Opp'n. Br. at 4). Dimmie says she is under the "belief" that Defendant Carey listened to her song and copied portions of its melodic and lyrical content in the development of Defendant Carey's song "Hero." (Compl.¶ 24). Dimmie also says she is also under the "belief" that Defendant Afanasieff utilized this recording during the development stages of "Hero." (Compl.¶ 24).

Defendants Carey and Afanasieff assert there was no infringement and that "Hero" was the product of independent creation. (Answer ¶ 19). They state that "Hero"

was written and created during two writing sessions in early 1992. (Carey Transcript ("Tr.") 41:4–12). Defendants Carey and Afanasieff have submitted, together with their moving papers herein, recordings of these sessions, along with Carey's "writing book," as proof of independent creation. Both Defendants allege that they did not hear Dimmie's "Be Your Own Hero" until after the commencement of the instant action. (Afanasieff Tr. 87:22–89:12; Carey Tr. 52:9–13). Defendants Afanasieff and Carey also state that they follow a strict policy of refusing to review unsolicited recordings of the type purportedly sent by Dimmie.[1] (Afanasieff Tr. 26:18–21; Carey Tr. 11:12–16).

## III. *Analysis*

### *Summary Judgment Standard*

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The existence of a factual dispute between the parties is only relevant if that particular fact is "material" (*i.e.*, its resolution is necessary to achieve a final judgment on the merits). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(c) precludes summary judgment if the dispute over the "material" fact is "genuine," in that there is suffi-

cient evidence to allow a "reasonable jury" to "return a verdict for the nonmoving party." *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). While the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party," it is clear that the "mere existence of an alleged factual dispute ... will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–248, 106 S.Ct. 2505, *see also Fran Corp. v. United States*, 164 F.3d 814, 816 (2nd Cir. 1999). It is up to the nonmoving party to show more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### *Copyright Infringement*

In order for a defendant to succeed on a motion for summary judgment he or she must demonstrate the absence of material evidence supporting the elements of the plaintiff's copyright infringement claim. *See Repp, K & R Music v. Webber*, 132 F.3d 882, 890 (2nd Cir.1997), *cert. denied*, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998).[2] To succeed in a copyright infringement case, a plaintiff must show: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *See Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358

---

1. Interestingly, this is not the first time that an action for copyright infringement has been filed over the song "Hero." In January of 1996, Christopher Selletti filed a copyright infringement action alleging that "Hero" was copied from a poem that he wrote in 1989. *See Selletti v. Carey*, 177 F.R.D. 189 (S.D.N.Y. 1998), *appeal dismissed*, 173 F.3d 104 (2d Cir.1999). United States District Court Judge Denny Chin dismissed *Selletti* with prejudice (after the plaintiff failed to pay sanctions for certain discovery violations and also failed to post a bond).

  Judge Chin believed that Selletti's claim was a "complete fabrication" and was persuaded, in part, by the fact that both Carey

(who was also a defendant in *Selletti*) and Afanasieff had put forth "extremely convincing" evidence of authorship. *See Selletti*, 177 F.R.D. at 193–194 (S.D.N.Y.1998). Such evidence of authorship included the recording tapes and the "writing book" produced by the Defendants in the present action. In *Selletti*, which did not involve plaintiff Dimmie and is not, therefore, binding upon her, Judge Chin characterizes this evidence as "compelling proof that Carey and Afanasieff actually wrote the song." *Id.* "The tapes show a work-in-progress and clearly have the earmarks of genuineness. Likewise, Carey's writing book appears to be genuine." *Id.*

2. *See* footnote 7 *infra*.

(1991); *Castle Rock Entertainment v. Carol Publishing Group, Inc.*, 150 F.3d 132, 137 (2nd Cir.1998); *Twin Peaks Productions, Inc. v. Publications International, Ltd.*, 996 F.2d 1366, 1372 (2nd Cir.1993). A prima facie showing of ownership is made by demonstrating that the plaintiff has obtained a certificate of registration from the United States Copyright Office. *See Paramount Pictures Corp. v. Carol Publishing Group*, 11 F.Supp.2d 329, 332 (S.D.N.Y.1998), *aff'd.*, 181 F.3d 83, 1999 WL 319328 (2d Cir.1999) (citing 17 U.S.C. § 410(c)). Unauthorized copying can be shown either by direct evidence, such as word for word copying, or by indirect evidence, such as proof that defendants had (a reasonable possibility of) "access" to the work, *see E.J. Novak v. National Broadcasting Company*, 752 F.Supp. 164, 170 (S.D.N.Y.1990), *reargument denied*, 760 F.Supp. 47 (S.D.N.Y.1991) (citing *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978)), combined with a showing of "probative [substantial] similarities" between the plaintiff's and defendant's work. *Castle Rock Entertainment*, 150 F.3d at 137; *see also Twin Peaks Productions*, 996 F.2d at 1372; *Repp & K & R Music*, 132 F.3d at 889; *Ringgold v. Black Entertainment Television*, 126 F.3d 70, 74 (2nd Cir.1997); *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 115 (2nd Cir.1998), *opinion amended by*, 169 F.3d 782 (2d Cir.1998). After unauthorized copying has been shown, the plaintiff must also prove that the portion copied amounts to an "improper or unlawful appropriation." *Castle Rock Entertainment, Inc.*, 150 F.3d at 137; *see also Repp & K & R Music*, 132 F.3d at 889.[3]

The Plaintiff here has satisfied the "ownership" requirement referred to above by producing a certificate of copyright registration, dated August 12, 1991, in accordance with 17 U.S.C. § 401(c). (Compl., Ex. A). The certificate constitutes prima facie evidence of copyright ownership. *Paramount Pictures*, 11 F.Supp.2d at 332.

Plaintiff asserts a theory of indirect proof of copying based upon the Defendants' alleged "access" to her copyrighted work and the "probative similarities" between the two songs. (Pl.'s Opp'n. Br. at 11, 14).

### *Access*

■ The Plaintiff bases her claim of access solely and exclusively upon the theory that she sent (by mail) a tape of "Be Your Own Hero" to corporate Defendant

---

**3.** The concept "substantial similarity" has caused some confusion because historically it has had two separate applications in the context of copyright law. *See Laureyssens v. Idea Group*, 964 F.2d 131, 140 (2nd Cir.1992), *Repp, K & R Music*, 132 F.3d at 889 n. 1, *Paramount Pictures Corp.*, 11 F.Supp.2d at 333. It has been used in the initial stages of an infringement inquiry, where the plaintiff offers indirect proof of actual copying. *See Ringgold*, 126 F.3d at 74–75, *Paramount Pictures*, 11 F.Supp.2d at 332 n. 5. It has also been used to prove that the copying is "actionable", *i.e.* that it amounts to a misappropriation of the copyrighted work. *Id., see also Castle Rock Entertainment*, 150 F.3d at 137–138, *Laureyssens*, 964 F.2d at 140–41 (2nd Cir.1992).

[T]he concept of "substantial similarity" itself has unfortunately been used to mean two different things. On the one hand, it has been used as the threshold to determine the degree of similarity that suffices, *once access has been shown*, as indirect proof of copying; on the other hand, "substantial similarity" is more properly used, after the fact of copying has been established, as the threshold for determining that the degree of similarity suffices to show actionable infringement. *Ringgold*, 126 F.3d at 74.

The Second Circuit has sought to clarify this situation by substituting the term "probative similarity" for "substantial similarity" in the initial injury. *See Ringgold*, 126 F.3d at 74. (citing Alan Latman, "Probative Similarity" as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement, 90 Colum.L.Rev. 1187, 1204 (1990)), *Castle Rock Entertainment*, 150 F.3d at 137–38; *Laureyssens*, 964 F.2d at 140; *Paramount Pictures*, 11 F.Supp.2d at 332 n. 5. The Court in *Ringgold* states: "when 'substantial similarity' is used to mean the threshold for copying as a factual matter, the better term is probative similarity, and that substantial similarity should mean only the threshold for actionable copying." *Id.* at 74.

Columbia Records. (Dimmie Aff. ¶ 7). The Plaintiff does not, however, offer or supply *any* evidence to establish that the Defendants, or any of them, actually had (a reasonable possibility of) access to a copy of "Be Your Own Hero" during or prior to the creation of "Hero." Plaintiff claims that Columbia Records (initially) received the tape and then must have passed it on to Defendants Mattola, Carey and Afanasieff before Hero was created. (Pl.'s Opp'n. Br. at 4.) There is not a scintilla of evidence that this occurred. She bases this purported receipt and exchange upon the series of uncertain inferences described at page 2 above and also upon the alleged "direct connection between Columbia Records, Inc. and Defendants Carey and Afanasieff." (Pl.'s Opp'n Br. at 16). She contends that the mailing of her song to Columbia Records, in turn, afforded Carey and Afanasieff a "reasonable opportunity to view or read Plaintiff's work." (Pl.'s Opp'n. Br. at 16). "At best, the proof establishes that Defendants received Plaintiff's song as mailed; at worst, there is a triable issue of fact whether Defendants received the song and had access to it." (Pl.'s Opp'n. Br. at 18). She also hypothesizes that the "pressure" on Defendant Carey to "produce recordings" and "fulfill her contractual obligations" with Defendant Columbia Records may have motivated her to copy "Be Your Own Hero." (Pl.'s Opp'n. Br. at 3).

Plaintiff's theory of access appears to be based upon the notion of "bare corporate receipt" and, relatedly, *Bevan v. Columbia Broadcasting System, Inc.,* 329 F.Supp. 601 (S.D.N.Y.1971), *reargument denied,* 1971 WL 17104 (S.D.N.Y. Nov. 1, 1971). In *Bevan,* the plaintiffs alleged that the Columbia Broadcasting Systems, Inc. ("CBS") television program "Hogan's Heroes" infringed their own presentation for a television series.[4] The plaintiffs based their access claim on the fact that they sent an unsolicited copy of their presentation to the corporate offices of CBS, *and*

*obtained an acknowledgment of receipt letter prior to the production of the CBS television series.* ("Acknowledgment and virtual rejection of the presentation was communicated to plaintiffs by CBS representative Lawrence White." *Bevan,* 329 F.Supp. at 609) The Court found for the plaintiffs holding that "defendants' failure to dispel the inference of access from the facts of submission to CBS is fatal to their motions for judgment N.O.V. or alternatively for a new trial." *Bevan,* 329 F.Supp. at 610. In the case at bar, Plaintiff Dimmie claims that her unsolicited (and undocumented) mailing(s) to Defendants of a recording of "Be Your Own Hero" constitutes "corporate receipt", under *Bevan,* and entitles her to a finding of prima facie access. (Pl.'s Opp'n. Br. at 15). *It does not.* On the facts presented here, plaintiff's "best case" scenario of (alleged) unsolicited mailing does not establish "access". It would be an unfair and legally impermissible "stretch" to conclude, as Plaintiff does, that "by Ms. Dimmie mailing her song to Columbia, Defendants Carey and Afanasieff 'had a reasonable opportunity to view or read Plaintiff's work' and therefore had access". *Id.* Mailing cannot, on these facts, be equated with access.

Plaintiff's reliance upon *Bevan* is misplaced. For one thing *Bevan* is factually distinguishable from the case at bar. In *Bevan, which involved a motion after a jury trial,* the plaintiffs, in fact, received notice of receipt of their presentation from CBS stating that CBS had an "interest in the ideas" but no current plans to use it. *Bevan,* 329 F.Supp. at 603. Thus, unlike this case, CBS acknowledged receiving and being interested in the plaintiff's presentation. Here, *there is no proof that corporate receipt, approaching the Bevan facts, was ever effectuated.* "To support a finding of access on a motion for summary judgment, the plaintiff must show 'a reasonable possibility of access, not a bare possibility.'" *Novak,* 752 F.Supp. at 168 (quoting *Ferguson v. National Broadcast-*

---

4. The presentation in *Bevan* included: "a thematic outline of the proposed series, description of the characters, six brief narrative sketches, and four story ideas...." *Bevan,* 329 F.Supp. at 603.

*ing Co.*, 584 F.2d 111, 113 (5th Cir.1978)), *Siskind v. Newton–John*, 1987 WL 11701 at *4 (S.D.N.Y. May 22, 1978).

Second, *Bevan* is (arguably) out-dated; more recent cases have come to a different conclusion in similar circumstances. For example, in *Meta–Film v. MCA Inc.*, 586 F.Supp. 1346 (C.D.Cal.1984), where the author of a screenplay entitled "Frat Rats" sent a copy of his work to a motion picture director at Universal City Studios, Inc., the Court specifically rejected the concept of "corporate receipt" stating:

> In such a business [film production], countless unsolicited scripts are submitted to numbers of individuals on studio lots every day. Under these circumstances, it is clearly unreasonable to attribute the knowledge of any one individual . . . to every other individual just because they occupy offices on the same studio lot. **To the extent that any case suggests a contrary result—that is, that "bare corporate receipt" is sufficient as a matter of law to preclude a finding of non-access—the court rejects such reasoning.**

*Meta–Film*, 586 F.Supp. at 1357–58 (emphasis added).

In *Cox v. Abrams*, 1997 WL 251532 (S.D.N.Y. May 14, 1997), District Court Judge Robert Ward refused to find "access" for summary judgment purposes, where the plaintiffs had mailed an unsolicited copy of their manuscript to the Harcourt Publishing Company ("Harcourt"). *See Cox*, 1997 WL 251532 at *3. The Court stated that the plaintiffs had failed to meet their burden of showing a "reasonable probability of access." *Id.* at *4. The Court was persuaded that plaintiffs did not provide any evidence to suggest that Harcourt had kept the manuscript, or provided the manuscript to the defendant, Para-

mount Pictures Corporation, who then used it in producing the (allegedly) infringing movie "Regarding Henry."

> in order to accept that [plaintiffs'] theory, this Court would have to assume (1) that Harcourt, despite rejecting the manuscript of Breaking the Tape, made and kept a copy of it and provided it or communicated its substance to one of the defendants; (2) that Harcourt editors and other Harcourt employees lied when they swore under oath that they did not provide the manuscript or communicate its substance to any of the defendants; and (3) that defendants lied when they swore under oath that they had never heard of the . . . [plaintiffs] or of the manuscript before this litigation. . . . Plaintiffs, however, have been unable to set forth any evidence supporting these assumptions. Under these circumstances, plaintiffs have failed to meet their burden of establishing a reasonable probability of access.

*Id.* (citation omitted).

Harcourt was found by Judge Ward not to have had "access" to the material even though there was evidence of "corporate receipt" of the manuscript.

A similar result was reached in *E.J. Novak v. National Broadcasting Company*, 752 F.Supp. 164 (S.D.N.Y.1990), *reargument denied*, 760 F.Supp. 47 (S.D.N.Y. 1991), where one of the issues was whether or not the head of programming at the National Broadcasting Company ("NBC"), Brandan Tartikoff ("Tartikoff"), had access to an unsolicited "demo" tape of a comedy act entitled "Video Vault." The tape was (allegedly) hand delivered to Tartikoff's office in December of 1985. Tartikoff stated under oath that he never viewed the tape and that it was his, and the network's, policy never to view unsolicited tapes.[5]

---

**5.** The Court in *Novak* observed that Tartikoff and NBC had "dual" return policies. *See Novak*, 752 F.Supp. at 169. According to Tartikoff's secretary, Barbara Barry, all unsolicited submissions addressed to Tartikoff were collected, and then forwarded to either the Burbank or New York Offices. *Id.* They were then returned to the senders with a

typed note similar to one received by the plaintiffs in *Novak*. *Id.* It was Tartikoff's policy to compose and sign a separate letter with respect to any submission that he had actually viewed. *Id.*

At the same time, it was NBC's policy to send all unsolicited manuscripts to its legal

*See Novak,* 752 F.Supp. at 169. The Court (Sweet, J.) refused to find that there was access merely because an unsolicited work may have been received by Tartikoff's office. "Given that ... [plaintiffs] Novak and Studer present no affirmative evidence that Tartikoff viewed the tapes, Novak and Studer do not succeed in raising a genuine question of fact as to Tartikoff's access to the gangster skit script by means of the updated [demo] tape." *Id.*

Similarly, in *Vantage Point v. Parker Brothers,* 529 F.Supp. 1204 (E.D.N.Y. 1981), *aff'd,* 697 F.2d 301 (2d Cir.1982), the plaintiff alleged that defendant had access to an unsolicited idea for a board game where he sent his idea to the President of Parker Brothers. The Court (Neaher, J.) held that unsolicited sending (and receipt) of a game idea, without more, did not constitute a prima facie showing of access. *See Vantage Point,* 529 F.Supp. at 1213.

In *McGaughey v. Twentieth Century Fox Film Corp.,* 12 F.3d 62 (5th Cir.1994), the plaintiff/appellant sought to overturn dismissal of his case on the grounds that the District Court failed to apply the *Bevan* interpretation of "corporate receipt." In *McGaughey,* plaintiff/appellant sent portions of his novel to defendant/appellee Twentieth Century Fox Television, and received a rejection letter dated May 13 1981. In July of 1988, the appellant viewed a movie released by Twentieth Century Fox Film Corp., entitled "Dreamscape", which he believed infringed his novel. *The Court upheld dismissal by the lower court on the grounds that the appellant had not produced any affirmative evidence to overcome the appellee's assertion that it had never seen the appellant's work. See McGaughey,* 12 F.3d at 65.

[I]n order to determine that the appellees had access to the appellant's work, we would have to assume that the persons who created Dreamscape lied about their lack of knowledge of the appellant and his novel. We would also have to

assume that Fox made copies of the portions of appellant's novel before returning them to his agent and then distributed those copies.

We decline to find access under the facts of this case.

*Id.*

The Plaintiff in the instant case has failed to provide any evidence that the Defendants, or any of them, had access to her work within the meaning of the cases cited. This is fatal to Plaintiff's claim. On the other hand, the Defendants, particularly Carey and Afanasieff, have offered proof that they did *not* receive or review the Plaintiff's work prior to the filing of the instant suit (Afanasieff Tr. 87:22–89:12; Carey Tr. 52:9–13); and that they follow a strict policy of refusing to review unsolicited recordings. (Afanasieff Tr. 26:18–21; Carey Tr. 11:12–16). On these facts, mere allegations of corporate receipt without more (even assuming corporate receipt had been established) do not create a prima facie case of access sufficient to defeat summary judgment. *See Meta–Film,* 586 F.Supp. at 1357–1358; *Cox,* 1997 WL 251532 at *3; *Novak,* 752 F.Supp. at 169. The Plaintiff has offered no direct or indirect proof to show that: 1) the work was ever received much less reviewed by Defendant Columbia Records, Carey, Afanasieff or Mattola; or 2) that Defendants Carey and Afanasieff ever had a reasonable opportunity/possibility to listen to her work before producing "Hero" much less that they actually copied Plaintiff's work. Similarly, Dimmie has not put forth any affirmative evidence to refute Defendants' (Carey and Afanasieff) sworn testimony that they did *not* hear or review "Be Your Own Hero"; that Hero was independently created; and their statements that it was against their policy and practice to review unsolicited tapes. Among other things, Defendant Afanasieff stated:

department. *Id.* It was the legal department's responsibility to return the manuscripts to

their original senders. *Id.*

Q: Can you describe those circumstances, if any, in which you would receive a tape from an artist who had sent one to Sony?

A: You have to understand, the only time I would hear a tape is an existing artist at Sony who is sending me a tape of a song to record for their album. **I would never listen to tapes outside of Sony that are potential artists.** (Afanasieff Tr. 26:15–23) (emphasis added)

Similarly, Defendant Carey stated:

Q: In 1989 did you ever have access to any tapes of any of Sony's, or CBS's tapes?

A: No. That's not what I do. **I don't accept any tapes, because I'm not seeking anybody else's material.** (Carey Tr. 11:12–16) (emphasis added)

Conclusory allegations, such as those made by the Plaintiff here, do not give rise to a "genuine issue" of material fact as to access. *Repp & K & R Music*, 132 F.3d at 889; *see also Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991); *Meta–Film*, 586 F.Supp. at 1357–58; *Cox*, 1997 WL 251532 at *3; *Novak*, 752 F.Supp. at 169; *Vantage Point*, 529 F.Supp. at 1212; *McGaughey*, 12 F.3d at 65. Otherwise, authors, producers, writers, and their affiliated companies could, as here, be forced to defend against baseless accusations of misappropriating others' work which they never saw, heard or solicited.

### Probative Similarity

■ The Plaintiff also argues that "probative similarities" exist between "Be Your Own Hero" and "Hero" presumably because Plaintiff's expert, Professor John Andrew Johnson ("Johnson"), concluded that the two works were so similar as to make independent creation "unlikely."(Pl.'s

Opp'n. Br., at 11). But probative similarity, in the absence of "access", is not dispositive. *See Procter & Gamble Co. v. Colgate–Palmolive Co.*, 199 F.3d 74, 77 (2d Cir.1999); *Twin Peaks Productions*, 996 F.2d at 1372 n. 1; *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir.1996); *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); *Ringgold*, 126 F.3d at 74; *Langman*, 160 F.3d at 115–116, (citing 4 MELVILLE NIMMER and DAVID NIMMER, NIMMER on COPYRIGHT § 13.01[B] (1998)); *Kerr v. New Yorker Magazine*, 63 F.Supp.2d 320, 325 (S.D.N.Y.1999); *Cox*, 1997 WL 251532 at *3.[6] The existence of "probative similarities" will not create a *prima facie* case of copying without a further showing of access.

### Striking Similarity

■ If, as here, a plaintiff has failed to produce indirect evidence of copying (by demonstrating both access and "probative similarities"), he or she may defeat a motion for summary judgment by showing that the works in question are "strikingly similar." *See Repp & K & R Music*, 132 F.3d at 889. Two works are considered to be "strikingly similar" if creation of one is so dependent on the other "as to preclude the possibility of independent creation." *Id.* "Striking similarity" can be shown through expert testimony. *Id.* at 890.

The Second Circuit Court of Appeals has addressed the application of "striking similarity" in the context of musical works in the case of *Repp, K & R Music v. Webber*. In *Repp, K & R Music*, the Court (Miner, J.) reversed the decision of the lower court which had based its findings, in part, upon its own "aural examination," instead of relying upon the testimony of highly qualified experts. The Court noted that both experts had concluded that

**6.** Recent Second Circuit decisions indicate that copying can be established by "evidence of access to the copyrighted work, similarities that are probative of copying between the

works, and expert testimony." *Castle Rock Entertainment*, 150 F.3d at 137; *see e.g., Repp & K & R Music*, 132 F.3d at 889; *Laureyssens*, 964 F.2d at 140.

the works were "strikingly similar" in their reports, and both experts specifically stated that the works could not have been created independently. *Id.* at 890–891.

It is somewhat unclear (from the papers submitted) to what extent the Plaintiff in this action is relying upon "striking similarity". In any event, Plaintiff has not demonstrated "striking similarity" sufficient to defeat summary judgment. **The Plaintiff's own expert witness, Professor Johnson, reviewed both songs and came to the conclusion that he did not "possess sufficient evidence ... to state without any doubt that 'Hero' was based on 'Be Your Own Hero.'"** (Snyder Aff., Ex. Q, p. 10). (emphasis added). Rather, Professor Johnson, concludes that, in his view, it is "unlikely" that the two works were created independently. (Snyder Aff., Ex. Q, p. 10). This is not enough. *See Repp, K & R Music,* 132 F.3d at 889 (Court held that "strikingly similar" works must be so identical as to preclude any reasonable possibility of independent creation); *Cox,* 1997 WL 251532 at *7 (In order for two works to be "strikingly similar" they must be so "alike as to preclude the possibility of independent creation"); *Gaste v. Kaiserman,* 863 F.2d 1061, 1068 (2d Cir.1988) (Court inferred access through "striking similarity" where plaintiff's expert testified that the two works were so similar that could not have been created independently). And, Professor Johnson further qualifies his conclusion by stating that Carey and Dimmie share "common musical sensibilities" that could have lead to the creation of similar but independent works. *Id.*

> Q: But you would agree, would you not, based on everything we've discussed, that while it's in your mind unlikely, it's possible that they were independently created?

A: I have to say it's within the realm of possibility *because there are differences that are there.* (Johnson Tr. 200:21–201:3). emphasis added.

Johnson's comments do not provide the level of proof required to show "striking similarity." He does not use the phrase "striking similarity." Nor does he state that "Hero" could not have been independently created.[7] *See Repp & K & R Music,* 132 F.3d at 890–891 (where the plaintiff's experts specifically stated that the works were so substantially similar and that they could not have been independently created.).

█ At the same time, Defendants here have produced substantial evidence to show that "Hero" was independently created. (Snyder Aff., Ex. S–V). Defendants' evidence includes several working tapes which document the creative steps that Carey and Afanasieff took to produce "Hero", and a journal kept by Carey that shows the evolution of the lyrics for the song. (Snyder Aff., Ex. T, U). As noted (although not binding here), the same evidence of "independent creation" was assessed in *Selletti,* and was characterized by Judge Chin as "compelling proof that Carey and Afanasieff actually wrote the song". *Selletti,* 177 F.R.D. at 194.

Where, as here, convincing proof of independent creation exits, prima facie copying (assuming it were established) may be rebutted. *See Procter & Gamble,* 199 F.3d at 77 ("If the plaintiff establishes a prima facie case of infringement, the defendant may rebut it by proving the affirmative defense of independent creation."); *Repp, K & R Music,* 132 F.3d at 889 ("[i]ndependent creation is an affirmative defense, evidence of which may be introduced to rebut a prima facie case of infringement"); *Kerr,* 63 F.Supp.2d at 324 ("If the plaintiff

---

7. In fact, Johnson was asked by the Plaintiff, in a letter dated March 11, 1999, to specifically reject the possibility of "Hero's" independent creation. (Snyder Aff., Ex. P).

"The report has to state where the similarities are, that they are so similar that there is no doubt Mariah had to have listened to my song to create her own version" (Snyder Aff., Ex. P).

Yet, he could not state "without doubt" that "Hero" was based on "Be Your Own Hero." (Snyder Aff. ¶ 10).

is able to make out a prima facie claim for copyright infringement, the defendant may then offer proof if independent creation as an affirmative defense."); *Cox*, 1997 WL 251532 at *7 ("[E]vidence ... [of] independent creation offers yet another ground on which summary judgement can be granted"). Therefore, even if the Plaintiff could be said to have established prima facie copying, (which she has not), both Defendants Carey and Afanasieff have offered convincing documentary evidence to support their claim of independent creation. *See Selletti*, 177 F.R.D. at 194; *see also Novak*, 752 F.Supp. at 164 (Court granted summary judgment to the defendants where they submitted proof of independent creation in the form of tape that was a "precursor" to their eventual work). There are no genuine issues of copying here. The Defendants here are entitled to summary judgment. *See Novak*, 752 F.Supp. at 170; *Cox*, 1997 WL 251532 at *7.

### IV. *Conclusion and Order*

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk is directed to enter an order dismissing the complaint.

**SO ORDERED.**